## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **JOHN A. BLAZI** | : | **CIVIL ACTION** |
| **and GREENWICH COFFEE, LLC** | | |
| | | |
| **Plaintiffs** | | |
| | | |
| **VS.** | : | **NO:** |
| | | |
| **JASON WAGONER** | | |
| **and NICHOLAS  DEGRAZIA** | : | **September 19, 2008** |

## COMPLAINT

For its complaint against defendants Jason Wagoner ("Wagoner") and Nicholas DeGrazia

("DeGrazia") (collectively "defendants"), Plaintiffs John Blazi ("Blazi") and Greenwich Coffee, LLC

 ( "GC, LLC") by and through their attorneys, states as follows:

## THE PARTIES

1. John Blazi ("Blazi")  is a resident of the Town of Middlebury and State of Connecticut.  He is the sole

member of  Greenwich Coffee, LLC which does business as "Greenwich Coffee".  He also is the holder

of the trademark "GREENWICH COFFEE".

2. Greenwich Coffee, LLC  is a limited liability company formed and existing under the laws of the State

of Connecticut which does business as "Greenwich Coffee" and operates as a specialty coffee retail

establishment located in Cheshire, Connecticut ('the Cheshire store') and has its principal place of

business 209 West Main Street, Cheshire Connecticut, 06410.   Greenwich Coffee , LLC is a business

enterprise that is engaged in interstate commerce.

3. Upon information and belief,  Jason Wagoner ("Wagoner")  is an individual who resides at 50 Pilgrim

Trail Woodbury, Connecticut.   Mr. Wagoner who was formerly employed by Greenwich Coffee, LLC as a "barista" in its Cheshire store located at  209 West Main Street, Cheshire Connecticut, 06410.   Jason Wagoner is also Nicholas DeGrazia's stepson and Wagoner acted as information technology specialist for Greenwich Coffee, LLC and was the sole administrator for the computer that ran the soft ware programs that controlled the store's point of sale, inventory and financial data controls systems. Wagoner also served as an "assistant store manager".

4. Upon information and belief,  Nicholas P. DeGrazia ("DeGrazia")  is an individual who resides at 50 Pilgrim Trail Woodbury, Connecticut who was formerly employed by Greenwich Coffee, LLC as a "store manager" in its Cheshire store located at  209 West Main Street, Cheshire Connecticut, 06410. Nicholas P. DeGrazia is also Jason Wagoner's stepfather.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121(a) (actions arising under the Trademark Act of 1946, as amended), 28 U.S.C. § 1331 (actions arising from laws of the United States), 28 U.S.C. § 1338(a) (acts of Congress relating to trademarks), 28 U.S.C. § 1338(b) (actions involving claim of unfair competition joined with related trademark law claim), 18 U.S.C § 1030 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6. Venue in this district is proper pursuant to 28 U.S.C. § 1391 (b) and (c). Defendants' tortious activity harms the reputation of Greenwich Coffee, LLC and the intellectual property rights of its sole member, John Blazi of the State of Connecticut, and thus the violation of Blazi's property rights and the harm to Greenwich Coffee, LLC occurs in the State of Connecticut.  Moreover, many of the relevant records and witnesses involved in this action exist in the State of Connecticut.

## BACKGROUND

**A. Blazi's Trademark**

7. Blazi has continuously used the trademark GREENWICH COFFEE in connection with Greenwich Coffee LLC's services as early as May 24, 2004.

8. Blazi holds federal registrations issued by the United States Patent and Trademark Office for GREENWICH COFFEE , and Design (Registration Number 3,241,383).

9. Blazi owns all rights and interests in the above registered marks, marks pending registrations, and common law marks (collectively "GREENWICH COFFEE trademarks").

10. Blazi has expended substantial resources in advertising and promoting the Greenwich Coffee trademarks.

11. GREENWICH COFFEE LLC offers high end specialty coffee products through its retail outlet in Cheshire Connecticut and through internet sales distribution channels.  Many of its products bear the distinctive "Greenwich Coffee"  labels or logo.

**B.  Wagoner and DeGrazia's Activities**

12. Upon information and belief,  Wagoner and Degrazia,  while employed by Greenwich Coffee, and at the request and direction of  John Blazi, designed and created an interactive website, the original purpose of which was to promote Greenwich Coffee's products and services in commerce throughout the United States, including within this State of Connecticut, through an interactive website located at the URL www.greenwichcoffee.com.  Without the permission or consent of Blazi, the holder of the trademark, "GREENWICH COFFEE", Wagoner, acting alone or in concert with DeGrazia or at the direction of DeGrazia registered the domain names URL www.greenwichcoffee.net and  www.greenwichcoffee.com.  in Wagoner's name alone.  This was done for the sole purpose to gain control over these domain names for future profit and use and to gain

leverage in future business dealings with Blazi and/or Greenwich Coffee, LLC.  At the time of their registry of these domain names, DeGrazia and Wagoner knew or based upon reasonable inquiry, could have discovered that GREENWICH COFFEE was trademarked and was registered to Blazi.

13. In January 2008,  Blazi informed DeGrazia that he would assume direct control over the management of the Cheshire store because he suspected and ultimately confirmed financial irregularities had occurred in the operation of the store. Shortly after Blazi assumed managerial control of the Greenwich Coffee store, Wagoner was terminated from employment from Greenwich Coffee, LLC for engaging in willful misconduct for his attempt to hide financial records from Blazi.   Thereafter, DeGrazia and Wagoner in an attempt to wrest control of the Cheshire store from Blazi and/or Greenwich Coffee, LLC encouraged all employees of the Cheshire store to engage in an illegal work stoppage.  Employees at the request of DeGrazia and/or Wagoner advised Blazi that they would quit if Wagoner was not re-hired.  Further, DeGrazia and/or Wagoner advised employees not to report to work again until such time as they re-gained control over the store's operation.

14. Based upon information and belief, shortly after Wagoner's termination, on or about January 12, 2008, DeGrazia and/or Wagoner and/or others acting at their direction removed vital equipment from the Cheshire store such that it could not serve its customers espresso-based products.  On or about January 12, 2008, Wagoner acting in concert with DeGrazia, shredded computer files on the store's computer that were vital in running the store's point of sale, inventory control and credit and gift card processing systems.  Said computer was used in interstate commerce.  This action was a further attempt on the part of DeGrazia and Wagoner to wrest control of the Cheshire store from Blazi and/or Greenwich Coffee, LLC and to force Greenwich Coffee, LLC to close its Cheshire store.

15. On or about January 13, 2008 DeGrazia advised Blazi that if he did not re-hire his stepson, Wagoner, that DeGrazia "would close the business down".  Later that day Blazi discovered that DeGrazia made good on his threat by organizing a work stoppage which left the store unattended. Blazi also discovered that essential equipment, the store's espresso machine, had been removed from the store and the store's

computer had operational files damaged and/or deleted such that it was no longer functional.  As a result of DeGrazia and Wagoner's actions in staging an illegal work stoppage, removing vital store equipment and sabotaging the stores computer system, Greenwich Coffee, LLC was forced to close its Cheshire store for a period of weeks so that its computer system could be repaired and new employees could be hired and trained.  During the training period of new employees, an employee who worked during the employment period of the defendants decided to continue working at the Cheshire store.  After the defendants learned of this, they harassed and intimidated the employee until she was forced to quit because of the continuing harassment by the defendants.   The defendants made it clear to the employee that they did not want any employees who were knowledgeable of the store's operation to be on site to assist Blazi in re-opening the store.   All of the conduct of the defendants as described herein had as it sole purpose to shut down Greenwich Coffee, LLC's business such that the defendants could re-gain control of the business enterprise.

16.  Prior to January 2008, DeGrazia had purchased all of the equipment, furnishings and inventory that once belonged to Greenwich Coffee, II, LLC a "sister" company to Greenwich Coffee, LLC such that DeGrazia was positioned to open a competing store.   Shortly after Greenwich Coffee's Cheshire store closed due to the actions of DeGrazia and Wagoner, DeGrazia, acting through his legal counsel,  offered to purchase the business known as Greenwich Coffee, LLC, d/b/a "Greenwich Coffee" from Blazi for a nominal amount, because, in his opinion the business would have diminishing value the longer Blazi exercised control over it.  This offer was refused by Blazi through his legal representative.  During negotiations between lawyers for Blazi/Greenwich Coffee, LLC  and  DeGrazia and Wagoner, Wagoner represented that he offered to sell Blazi the domain names but said offer was refused.   During this negotiation, Blazi offered to release DeGrazia and Wagoner from all liability claims in exchange for a concession that DeGrazia and/or Wagoner would not open a competing store in close proximity to Greenwich Coffee's Cheshire store.  This concession was refused and negotiations broke down.

17.  Notwithstanding their termination, Wagoner and DeGrazia continued to host the

www.greenwichcoffee.com. website in its "on-line store" format until Blazi formally demanded, through his legal represenatative, that his trademark not be used on said site.   After said demand,  Wagoner and Degrazia first distorted the images of the Greenwich Coffee logo and trade name on said site and then converted the website from an "online store" format into a "blog" site format.   This "blog site" format continued to use the Greenwich Coffee trade name as its web address and  did not indicate to visitors that the site was not affiliated with Blazi and/or Greenwich Coffee, LLC.  The sole purpose of the site was to post negative and disparaging comments about Greenwich Coffee, its owners, managers, new employees, products and services in an effort to undermine the goodwill and public confidence in Greenwich Coffee, LLC in the community because DeGrazia and Wagoner were now in competition with Blazi and Greenwich Coffee, LLC.   DeGrazia and Wagoner's original business plan was to force Greenwich Coffee's Cheshire store to close through use of strong-arm tactics.   When this tactic failed they engaged in a web-based campaign of discrediting the store, its owner and new employees through the use of the Greenwichcoffee.com website.  Both the original and subsequent plan were designed to force Blazi to close the Cheshire store so that DeGrazia and Wagoner could then purchase it for a nominal value and then re-open it again with the former staff .   The  fall back plan was to open another competing specialty store in the immediate area of Greenwich Coffee's store in Cheshire Connecticut.  Notwithstanding the formal demand that the defendants cease use of the trademark; "GREENWICH COFFEE",  Wagoner and DeGrazia  continued their unauthorized use of the domain name www.greenwichcoffee.com. to host their blog site.

18. At some time after creating the web site www.greenwichcoffee.com, the defendants, without the authorization of Greenwich Coffee, LLC and/or Blazi, created and sold gift cards that were not processed through Greenwich Coffee's authorized gift-card service provider but rather were serviced through the web site that the defendants' had created.   As a result, Greenwich Coffee, LLC had no way to monitor gift card sales or to track the receipt or disbursement of revenue from gift card sales or to monitor the balance on individual cards purchased by its customers.  Defendants actions in creating unauthorized gift

cards and constructing and maintaining a non-authorized processing system as part of the web-site they created constituted fraud and resulted in damages to the plaintiff's business.  After the defendants were terminated from employment, the plaintiffs demanded that the defendants restore the plaintiffs' ability to honor gift cards that were sold but the defendants refused, causing the plaintiffs to rely on customers accounts as to their credit card balances.   Because the defendants destroyed the store's computer files and the business records they contained, and removed business records from the premises,  the plaintiffs could not account for how much revenue the defendants took in as a result of credit card sales.  The acts of the defendants as described herein defrauded the plaintiffs and caused a loss of revenue in an amount to be determined at trial.

19.   On September 3, 2008 Blazi put DeGrazia and Wagoner on notice that their use of the "GREENWICH COFFEE" trademark was in violation of 15 U.S.C. 1125 (d) by email to their attorney. Blazi reiterated his demands that the defendants cease and desist from using the GREENWICH COFFEE marks.  Based upon information and belief, this notice was communicated  to DeGrazia and Wagoner.

20.  Based upon information and belief,  on September 5, 2008, Wagoner and/or DeGrazia caused the creation of a new domain name; "Cheshirecommunityboard.com" such that when the URL address "Greenwichcoffee.com" was entered on a computer as the domain name, the website would open with "Cheshirecommunityboard.com as the web address.   However, everything else on the blog site remained unchanged.  After, Blazi advised DeGrazi and Wagoner through their legal representative, that this ruse was not in the spirit of ACPA and constituted a continuing infringement of his trademark rights, the Greenwichcoffee.com domain was taken off line as of September 9, 2008.

## COUNT I

## Trademark Infringement in Violation of Federal Law

## [Lanham Act §32(1) 15 *V.S.C.* §1114(1 (2005)]

21. Blazi repeats and re-alleges paragraphs 1 through 20 as if fully stated herein.

22. Blazi owns all rights, title and interest in and to his federally registered trademarks stated above.

23. Upon information and belief, defendants have willfully infringed Blazi's registered trademark with the intention of causing confusion, mistake or deception. The goodwill of Greenwich Coffee, LLC's business under the GREENWICH COFFEE trademark is of great value, and Blazi and Greenwich Coffee, LLC will suffer irreparable harm should infringement be allowed to continue to the detriment of their trademark, reputation, and goodwill.

24. Blazi has no control over the quality of the products and services offered by defendants. Thus, the value of Blazi's mark is subject to damage by defendants and affiliated individuals it cannot control. Blazi and Greenwich Coffee, LLC, d/b/a Greenwich Coffee's reputation will suffer because customers will associate defendants' goods and services as being approved or reviewed by Blazi when no such endorsement or review has occurred. Unless enjoined by this Court from so doing, defendants will continue to engage in acts of infringement of the sort complained of herein, to the irreparable damage and injury of Blazi.

25. Defendants' acts of infringement, as alleged herein, have been undertaken with knowledge of Blazi's exclusive rights to the GREENWICH COFFEE trademark, entitling Blazi to an award of treble its actual damages, plus attorneys' fees in bringing and maintaining this action, pursuant to section 3 5(b) of the Lanham Act. 15 US.c. § 1]] 7(b) (2005).

## COUNT II

## Federal Unfair Competition and False Designation of Origin

## [Lanham Act 543(a); 15 U.S.C. § 1125(a) (2005)]

26. Blazi repeats and re-alleges paragraphs 1 through 25 as if fully stated herein.

27. Blazi owns all rights, title and interest in and to the GREENWICH COFFEE marks.

28. Defendants' use of Blazi's marks in interstate commerce, including use on the World Wide Web, is likely to deceive customers and prospective customers into believing that defendants' products and

services are those of  Blazi and/or Greenwich Coffee, LLC  in violation of 15 US.c. §1125(a).

29. Defendants' actions are likely to deceive the public into believing that defendants have an affiliation, connection, or association with Blazi and/or Greenwich Coffee, LLC, d/b/a Greenwich Coffee  in violation of 15 US.C.§ 1125(a). In turn, Blazi and/or Greenwich Coffee, LLC, d/b/a Greenwich Coffee reputation will be harmed by customers believing that Blazi and/or Greenwich Coffee, LLC, d/b/a Greenwich Coffee have in some way approved or reviewed the defendants' blog site when Blazi and/or Greenwich Coffee, LLC, d/b/a Greenwich Coffee  have not.

30. Unless enjoined by this Court from so doing, defendants will continue to engage in their acts of false representation and designation as complained of herein, to the irreparable damage and injury of  Blazi and/or Greenwich Coffee, LLC, d/b/a Greenwich Coffee.

31. Defendants' continued false representation and designation is with full knowledge of  Blazi's exclusive rights to the GREENWICH COFFEE marks. Such acts are made in conscious disregard of Blazi's rights entitling Blazi to treble its actual damages, plus attorneys' fees in bringing and maintaining this action, pursuant to section 35(b) of the Lanham Act. 15 US.C. § 1117(b).

## COUNT III .

## Common Law Unfair Competition Under Connecticut Common Law

32. The plaintiffs  repeat and re-allege paragraphs 1 through 31 as if fully stated herein.

33. Defendants' conduct constitutes unfair competition under the common law of the State of Connecticut.

34. As a result of defendants' wrongful conduct, Blazi and/or Greenwich Coffee, LLC have been damaged and will continue to be damaged in an amount to be determined at trial.  Blazi has suffered and continues to suffer immediate and irreparable injury for which it has no adequate remedy at law unless this Court enjoins the wrongful activities of defendants.

## COUNT IV. 18 U.S.C.§   1030(a) (5) (A)

35. The plaintiffs repeat and re-allege paragraphs 1 through 34 as if fully stated herein.

36. At all times mentioned herein, the computer utilized by Greenwich Coffee, LLC in its Cheshire store was used in interstate commerce for, among other things, the processing of credit card transactions and, as such is a "protected computer" within the meaning of 18 U.S.C. 1030 (a) (5) (A).

37. Wagoner acting in concert with or at the direction of DeGrazia destroyed computer files on said computer in violation of 18 U.S.C. § 1030 .

38. As a result of the defendants' actions in destroying computer files, Greenwich Coffee, LLC had to incur expense in having its computer files and systems repaired and/or restored and lost business revenue due to the forced interruption of its business due to the inability to operate the store's point of sale soft ware system in an amount to be determined at trial.

## COUNT VI . CIVIL CONSPIRACY

39. The plaintiffs repeat and re-allege paragraphs 1 through 38 as if fully stated herein.

40. At all times mentioned herein the defendants engaged in a civil conspiracy and the acts of one were the acts of or for the benefit, of the other.

## PRAYER FOR RELIEF

**WHEREFORE, BLAZI AND GREENWICH COFFEE, LLC pray as follows:**

1. That plaintiffs be awarded compensatory damages they have sustained by defendants' actions, their costs and disbursement in this action, and defendants' profits (or statutory damages if so elected by BLAZI), and reasonable attorney's fees pursuant to 15 U.S.C. 1117 .

2. That the plaintiffs be awarded treble and/or punitive damages in an amount to be determined at trial

3) That the defendant Wagoner be ordered to transfer the domain names

www.greenwichcoffee.com  and www.greenwichcoffee.net  to BLAZI.

4) That BLAZI be awarded such other and further relief as this Court may deem just and

proper**.**


**PLAINTIFFS: JOHN A. BLAZI**
**and GREENWICH COFFEE, LLC**

Respectfully submitted,

_____

Bethany B. Karas  Bar (ct 27472
ATTORNEY FOR PLAINTIFFS
786 Chase Parkway
Waterbury, CT 06708
(203) 596-0600
fax (203) 596-7953
blazi.law@sbcglobal.net

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


**JOHN A. BLAZI**                              :          **CIVIL ACTION**
**and GREENWICH COFFEE, LLC**


     **Plaintiffs**

**VS.**                                        :          **NO:**

**JASON WAGONER**
**and NICHOLAS  DEGRAZIA**                     :          **September 19, 2008**



## APPLICATION FOR TEMPORARY RESTRAINING ORDER


For its application for a temporary restraining order against defendants Jason Wagoner

("Wagoner") and Nicholas DeGrazia ("DeGrazia") (collectively "defendants"), Plaintiffs John Blazi

("Blazi") and Greenwich Coffee, LLC  ( "GC, LLC") by and through their attorneys, states as follows:

## THE PARTIES

1. John Blazi ("Blazi")  is a resident of the Town of Middlebury and State of Connecticut.  He is the sole

member of  Greenwich Coffee, LLC which does business as "Greenwich Coffee".  He also is the holder

of the trademark "GREENWICH COFFEE".

2. Greenwich Coffee, LLC  is a limited liability company formed and existing under the laws of the State

of Connecticut which does business as "Greenwich Coffee" and operates as a specialty coffee retail

establishment located in Cheshire, Connecticut ('the Cheshire store") and has its principal place of

business 209 West Main Street, Cheshire Connecticut, 06410.   Greenwich Coffee , LLC is a business

enterprise that is engaged in interstate commerce.

3. Upon information and belief, Jason Wagoner ("Wagoner") is an individual who resides at 50 Pilgrim Trail Woodbury, Connecticut. Mr. Wagoner who was formerly employed by Greenwich Coffee, LLC as a "barista" in its Cheshire store located at 209 West Main Street, Cheshire Connecticut, 06410. Jason Wagoner is also Nicholas DeGrazia's stepson and Wagoner acted as information technology specialist for Greenwich Coffee, LLC and was the sole administrator for the computer that ran the soft ware programs that controlled the store's point of sale, inventory and financial data controls systems. Wagoner also served as an "assistant store manager".

4. Upon information and belief, Nicholas P. DeGrazia ("DeGrazia") is an individual who resides at 50 Pilgrim Trail Woodbury, Connecticut who was formerly employed by Greenwich Coffee, LLC as a "store manager" in its Cheshire store located at 209 West Main Street, Cheshire Connecticut, 06410. Nicholas P. DeGrazia is also Jason Wagoner's stepfather.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121(a) (actions arising under the Trademark Act of 1946, as amended), 28 U.S.C. § 1331 (actions arising from laws of the United States), 28 U.S.C. § 1338(a) (acts of Congress relating to trademarks), 28 U.S.C. § 1338(b) (actions involving claim of unfair competition joined with related trademark law claim), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6. Venue in this district is proper pursuant to 28 U.S.C. § 1391 (b) and (c). Defendants' tortious activity harms the reputation of Greenwich Coffee, LLC and the intellectual property rights of its sole member, John Blazi of the State of Connecticut, and thus the violation of Blazi's property rights and the harm to Greenwich Coffee, LLC occurs in the State of Connecticut. Moreover, many of the relevant records and witnesses involved in this action exist in the State of Connecticut.

## BACKGROUND

**A. Blazi's Trademark**

7. Blazi has continuously used the trademark GREENWICH COFFEE in connection with

Greenwich Coffee LLC's services as early as May 24, 2004.

8. Blazi holds federal registrations issued by the United States Patent and Trademark Office for

GREENWICH COFFEE , and Design (Registration Number 3,241,383).

9. Blazi owns all rights and interests in the above registered marks, marks pending registrations,

and common law marks (collectively "GREENWICH COFFEE trademarks").

10. Blazi has expended substantial resources in advertising and promoting the Greenwich Coffee

trademarks.

11. GREENWICH COFFEE LLC offers high end specialty coffee products through its retail

outlet in Cheshire Connecticut and through internet sales distribution channels.  Many of its

products bear the distinctive "Greenwich Coffee"  labels or logo.

**B**.  **Wagoner and DeGrazia's Activities**

12. Upon information and belief,  Wagoner and Degrazia,  while employed by Greenwich

Coffee, and at the request and direction of  John Blazi, designed and created an interactive

website, the original purpose of which was to promote Greenwich Coffee's products and services

in commerce throughout the United States, including within this State of Connecticut, through an

interactive website located at the URL www.greenwichcoffee.com.  Without the permission or consent

of Blazi, the holder of the trademark, "GREENWICH COFFEE", Wagoner, acting alone or in concert

with DeGrazia or at the direction of DeGrazia registered the domain names URL

www.greenwichcoffee.net and  www.greenwichcoffee.com. in Wagoner's name alone.  This was done

for the sole purpose to gain control over these domain names for future profit and use and to gain

leverage in future business dealings with Blazi and/or Greenwich Coffee, LLC.  At the time of their

registry of these domain names, DeGrazia and Wagoner knew or based upon reasonable inquiry, could have discovered that GREENWICH COFFEE was trademarked and was registered to Blazi.

13. In January 2008,  Blazi informed DeGrazia that he would assume direct control over the management of the Cheshire store because he suspected and ultimately confirmed financial irregularities had occurred in the operation of the store. Shortly after Blazi assumed managerial control of the Greenwich Coffee store, Wagoner was terminated from employment from Greenwich Coffee, LLC for engaging in willful misconduct for his attempt to hide financial records from Blazi.    Thereafter, DeGrazia and Wagoner in an attempt to wrest control of the Cheshire store from Blazi and/or Greenwich Coffee, LLC encouraged all employees of the Cheshire store to engage in an illegal work stoppage.  Employees at the request of DeGrazia and/or Wagoner advised Blazi that they would quit if Wagoner was not re-hired.  Further, DeGrazia and/or Wagoner advised employees not to report to work again until such time as they re-gained control over the store's operation.

14. Based upon information and belief, shortly after Wagoner's termination, on or about January 12, 2008, DeGrazia and/or Wagoner and/or others acting at their direction removed vital equipment from the Cheshire store such that it could not serve its customers espresso-based products.  On or about January 12, 2008, Wagoner acting in concert with DeGrazia, shredded computer files on the store's computer that were vital in running the store's point of sale, inventory control and credit and gift card processing systems.  Said computer was used in interstate commerce.  This action was a further attempt on the part of DeGrazia and Wagoner to wrest control of the Cheshire store from Blazi and/or Greenwich Coffee, LLC and to force Greenwich Coffee, LLC to close its Cheshire store.

15.  On or about January 13, 2008 DeGrazia advised Blazi that if he did not re-hire his stepson, Wagoner, that DeGrazia "would close the business down".  Later that day Blazi discovered that DeGrazia made good on his threat by organizing a work stoppage which left the store unattended. Blazi also discovered that essential equipment, the store's espresso machine, had been removed from the store and the store's computer had operational files damaged and/or deleted such that it was no longer functional.  As a result

of DeGrazia and Wagoner's actions in staging an illegal work stoppage, removing vital store equipment and sabotaging the stores computer system, Greenwich Coffee, LLC was forced to close its Cheshire store for a period of weeks so that its computer system could be repaired and new employees could be hired and trained.  During the training period of new employees, an employee who worked during the employment period of the defendants decided to continue working at the Cheshire store.  After the defendants learned of this, they harassed and intimidated the employee until she was forced to quit because of the continuing harassment by the defendants.   The defendants made it clear to the employee that they did not want any employees who were knowledgeable of the store's operation to be on site to assist Blazi in re-opening the store.   All of the conduct of the defendants as described herein had as it sole purpose to shut down Greenwich Coffee, LLC's business such that the defendants could re-gain control of the business enterprise.

16.  Prior to January 2008, DeGrazia had purchased all of the equipment, furnishings and inventory that once belonged to Greenwich Coffee, II, LLC a "sister" company to Greenwich Coffee, LLC such that DeGrazia was positioned to open a competing store.   Shortly after Greenwich Coffee's Cheshire store closed due to the actions of DeGrazia and Wagoner, DeGrazia, acting through his legal counsel,  offered to purchase the business known as Greenwich Coffee, LLC, d/b/a "Greenwich Coffee" from Blazi for a nominal amount, because, in his opinion the business would have diminishing value the longer Blazi exercised control over it.  This offer was refused by Blazi through his legal representative.  During negotiations between lawyers for Blazi/Greenwich Coffee, LLC  and  DeGrazia and Wagoner, Wagoner represented that he offered to sell Blazi the domain names but said offer was refused.   During this negotiation, Blazi offered to release DeGrazia and Wagoner from all liability claims in exchange for a concession that DeGrazia and/or Wagoner would not open a competing store in close proximity to Greenwich Coffee's Cheshire store.  This concession was refused and negotiations broke down.

17.  Notwithstanding their termination, Wagoner and DeGrazia continued to host the www.greenwichcoffee.com.  website in its "on-line store" format until Blazi formally demanded, through

his legal represenatative, that his trademark not be used on said site.   After said demand,  Wagoner and

Degrazia first distorted the images of the Greenwich Coffee logo and trade name on said site and then

converted the website from an "online store" format into a "blog" site format.   This "blog site" format

continued to use the Greenwich Coffee trade name as its web address and  did not indicate to visitors that

the site was not affiliated with Blazi and/or Greenwich Coffee, LLC.  The sole purpose of the site was to

post negative and disparaging comments about Greenwich Coffee, its owners, managers, new employees,

products and services in an effort to undermine the goodwill and public confidence in Greenwich Coffee,

LLC in the community because DeGrazia and Wagoner were now in competition with Blazi and

Greenwich Coffee, LLC.   DeGrazia and Wagoner's original business plan was to force Greenwich

Coffee's Cheshire store to close through use of strong-arm tactics.   When this tactic failed they engaged

in a web-based campaign of discrediting the store, its owner and new employees through the use of the

Greenwichcoffee.com website.  Both the original and subsequent plan were designed to force Blazi to

close the Cheshire store so that DeGrazia and Wagoner could then purchase it for a nominal value and

then re-open it again with the former staff .   The  fall back plan was to open another competing specialty

store in the immediate area of Greenwich Coffee's store in Cheshire Connecticut.  Notwithstanding the

formal demand that the defendants cease use of the trademark; "GREENWICH COFFEE",  Wagoner and

DeGrazia  continued their unauthorized use of the domain name www.greenwichcoffee.com.  to host

their blog site.

18. At some time after creating the web site www.greenwichcoffee.com, the defendants, without the

authorization of Greenwich Coffee, LLC and/or Blazi, created and sold gift cards that were not processed

through Greenwich Coffee's authorized gift-card service provider but rather were serviced through the

web site that the defendants' had created.   As a result, Greenwich Coffee, LLC had no way to monitor

gift card sales or to track the receipt or disbursement of revenue from gift card sales or to monitor the

balance on individual cards purchased by its customers.  Defendants actions in creating unauthorized gift

cards and constructing and maintaining a non-authorized processing system as part of the web-site they

created constituted fraud and resulted in damages to the plaintiff's business.  After the defendants were terminated from employment, the plaintiffs demanded that the defendants restore the plaintiffs' ability to honor gift cards that were sold but the defendants refused, causing the plaintiffs to rely on customers accounts as to their credit card balances.   Because the defendants destroyed the store's computer files and the business records they contained, and removed business records from the premises,  the plaintiffs could not account for how much revenue the defendants took in as a result of credit card sales.  The acts of the defendants as described herein defrauded the plaintiffs of revenue in an amount to be determined at trial.

19.   On September 3, 2008 Blazi put DeGrazia and Wagoner on notice that their use of the "GREENWICH COFFEE" trademark was in violation of 15 U.S.C. 1125 (d) by email to their attorney. Blazi reiterated his demands that the defendants cease and desist from using the GREENWICH COFFEE marks.  Based upon information and belief, this notice was communicated  to DeGrazia and Wagoner.

20.   Based upon information and belief,  on September 5, 2008, Wagoner and/or DeGrazia caused the creation of a new domain name; "Cheshirecommunityboard.com" such that when the URL address "Greenwichcoffee.com" was entered on a computer as the domain name, the website would open with "Cheshirecommunityboard.com as the web address.   However, everything else on the blog site remained unchanged.  After, Blazi advised DeGrazi and Wagoner through their legal representative, that this ruse was not in the spirit of ACPA and constituted a continuing infringement of his trademark rights, the Greenwichcoffee.com domain was taken off line as of September 9, 2008.

## COUNT I

## Trademark Infringement in Violation of Federal Law

## [Lanham Act §32(1) 15 *V.S.C.* §1114(1 (2005)]

21. Blazi repeats and re-alleges paragraphs 1 through 20 as if fully stated herein.

22. Blazi owns all rights, title and interest in and to his federally registered trademarks stated above.

23. Upon information and belief, defendants have willfully infringed Blazi's registered trademark with the intention of causing confusion, mistake or deception. The goodwill of Greenwich Coffee, LLC's business under the GREENWICH COFFEE  trademark is of great value, and Blazi and Greenwich Coffee, LLC will suffer irreparable harm should infringement be allowed to continue to the detriment of their trademark, reputation, and goodwill.

24. Blazi has no control over the quality of the products and services offered by defendants. Thus, the value of  Blazi's mark is subject to damage by defendants and affiliated individuals it cannot control. Blazi and Greenwich Coffee, LLC, d/b/a Greenwich Coffee's  reputation will suffer because customers will associate defendants' goods and services as being approved or reviewed by Blazi when no such endorsement or review has occurred.  Unless enjoined by this Court from so doing, defendants will continue to engage in acts of infringement of the sort complained of herein, to the irreparable damage and injury of Blazi.

25. Defendants' acts of infringement, as alleged herein, have been undertaken with knowledge of  Blazi's exclusive rights to the GREENWICH COFFEE trademark, entitling Blazi to an award of treble its actual damages, plus attorneys' fees in bringing and maintaining this action, pursuant to section 3 5(b) of the Lanham Act. 15 US.c. § 1]] 7(b) (2005).

**COUNT II**

## Federal Unfair Competition and False Designation of Origin

## [Lanham Act 543(a); 15 U.S.C. § 1125(a) (2005)]

26.  Blazi repeats and re-alleges paragraphs 1 through 25 as if fully stated herein.

27. Blazi owns all rights, title and interest in and to the GREENWICH COFFEE marks.

28. Defendants' use of  Blazi's marks in interstate commerce, including use on the World Wide Web, is likely to deceive customers and prospective customers into believing that defendants' products and services are those of  Blazi and/or Greenwich Coffee, LLC  in violation of 15 US.c. §1125(a).

29. Defendants' actions are likely to deceive the public into believing that defendants have an affiliation,

connection, or association with Blazi and/or Greenwich Coffee, LLC, d/b/a Greenwich Coffee  in

violation of 15 US.C.§ 1125(a). In turn, Blazi and/or Greenwich Coffee, LLC, d/b/a Greenwich Coffee

reputation will be harmed by customers believing that Blazi and/or Greenwich Coffee, LLC, d/b/a

Greenwich Coffee have in some way approved or reviewed the defendants' blog site when Blazi and/or

Greenwich Coffee, LLC, d/b/a Greenwich Coffee  have not.

30. Unless enjoined by this Court from so doing, defendants will continue to engage in their acts of false

representation and designation as complained of herein, to the irreparable damage and injury of  Blazi

and/or Greenwich Coffee, LLC, d/b/a Greenwich Coffee.

31. Defendants' continued false representation and designation is with full knowledge of  Blazi's

exclusive rights to the GREENWICH COFFEE marks. Such acts are made in conscious disregard of

Blazi's rights entitling Blazi to treble its actual damages, plus attorneys' fees in bringing and maintaining

this action, pursuant to section 35(b) of the Lanham Act. 15 US.C. § 1117(b).

# COUNT III .

## Common Law Unfair Competition Under Connecticut Common Law

32. The plaintiffs  repeat and re-allege paragraphs 1 through 31 as if fully stated herein.

33. Defendants' conduct constitutes unfair competition under the common law of the State of

Connecticut.

34. As a result of defendants' wrongful conduct, Blazi and/or Greenwich Coffee, LLC have been

damaged and will continue to be damaged in an amount to be determined at trial.  Blazi has suffered and

continues to suffer immediate and irreparable injury for which it has no adequate remedy at law unless

this Court enjoins the wrongful activities of defendants.

### COUNT VI .  CIVIL CONSPIRACY

39. The plaintiffs repeat and re-allege paragraphs 1 through 38 as if fully stated herein.

40. At all times mentioned herein the defendants engaged in a civil conspiracy and the acts of one were

the acts of or for the benefit, of the other.

**PRAYER FOR RELIEF**

**WHEREFORE,  BLAZI AND GREENWICH COFFEE, LLC pray as follows:**

(i) That the Court enter a temporary restraining order pending a preliminary injunction hearing that enjoins defendants, their agents, employees, servants, privies, successors and assigns, attorneys and representatives, and all persons and organizations in active participation and combination with it, from

(a) using any of BLAZI's trademarks including GREENWICH COFFEE  or any other name or mark confusingly similar thereto or using any counterfeit or colorable imitation thereof, or using the name or mark along or in combination with other words, names, styles, titles or marks in connection with the rendering or the advertising or promotion of related goods or services including (A) on Wagoner's website located at the URL www.greenwichcoffee.com  and www.greenwichcoffee.net (B) on presentation materials; (C) on product containers and/or packaging; and (D) on business letterhead or facsimile cover sheets;

(b) falsely representing that defendants have any affiliation with Blazi and/or Greenwich Coffee, LLC or otherwise engaging in deceptive acts and practices in the conduct of their business;

(ii) That the Court enter a preliminary injunction of the relief requested in (i) pending resolution at trial;

(iii) That the Court enter a permanent injunction of the of the relief requested in (i) upon resolution at trial;

(iv) That the Court enter judgment that defendants have committed trademark infringement pursuant 15 U.S.C. § 1114(1); unfair competition and false designation of origin under the Lanham Act pursuant to 15 USe. § 1125(a); and unfair competition under State of Connecticut common law;

(v) That defendants be required to deliver up for destruction any and all advertisements, brochures, promotional materials, product containers and/or packaging, evaluations, letterhead, and other written material, and other items in the possession, custody or control of defendants which if advertised, displayed, or transmitted by defendants would violate the injunction herein granted;

(vi) That defendants be ordered to identify immediately in writing, and to produce immediately all documents in their possession identifying all parties sent promotional materials bearing any mark of  BLAZI or falsely advertising their affiliation with Greenwich Coffee, LLC.

(v.) That the defendant Wagoner be ordered to transfer the domain names

www.greenwichcoffee.com  and www.greenwichcoffee.net  to BLAZI.

(vi.) That BLAZI be awarded such other and further relief as this Court may deem just and proper.

**PLAINTIFFS: JOHN A. BLAZI**
**and GREENWICH COFFEE, LLC**

Respectfully submitted,

_____/s/_____
Bethany B. Karas  Bar (ct 27472
ATTORNEY FOR PLAINTIFFS
786 Chase Parkway
Waterbury, CT 06708
(203) 596-0600
fax (203) 596-7953
blazi.law@sbcglobal.net